# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**JOSHUA M. SAAVEDRA,**

          Plaintiff,

v.                                      10cv067 MCA/RHS

**CITY OF ALBUQUERQUE,**
a Municipal Entity Organized Under
the Laws of the State of New Mexico and
its subsidiary the Albuquerque Police
Department; **BOARD OF COUNTY**
**COMMISSIONERS OF THE COUNTY**
**OF BERNALILLO**, a political subdivision
of the State of New Mexico; **ERIC SMITH**,
a Police Officer with the Albuquerque
Police Department, individually;
**EUGENIA MECCI**, a probation officer
with Pre-Trial Court Services for the
Second Judicial District, individually;
**JOHN/JANE I-X DOES**, Employees or
Agents for the City of Albuquerque, County
of Bernalillo and/or the Bernalillo County
Metropolitan Detention Center,

          Defendants.


## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on *Defendant Ugenia Mecci's Motion For Summary Judgment Or In the Alternative Motion To Dismiss* [Doc 20] and *Defendant Eric Smith's Opposed Motion For Summary Judgment, And Memorandum In Support, Requesting Dismissal Of Plaintiff's Complaint* [Doc 40]. Having considered the parties'

submissions, the relevant law, and otherwise being fully advised in the premises, the

Court grants the *Motions*.

I.      **BACKGROUND**

According to the *Complaint For Civil Rights Violations & Violation Of The New

Mexico Tort Claims Act* [Doc 1-2], on May 22, 2007, the Albuquerque Police Department

responded to a domestic violence call.  [Id. at 4]  Officer Eric Smith responded to the call.

[Id. at 4] The alleged victim reported to Officer Smith that her nephew, an individual

named Joshua Saavedra, had battered her.  [Id.]  Based on information gleaned through

his investigation, Officer Smith issued a criminal summons for "Joshua Saavedra," and

included certain identifiers, such as an address, a birth date, and a social security number.

[Id. at 5]  On September 8, 2007, Plaintiff, whose name is Joshua Saavedra, was arrested

on an unrelated charge.   [Id.]  He was permitted to post bond, but before he was

released, he was placed on a "No Bond Hold," due to the criminal summons filed by

Officer Smith.  [Id.]

While he waited to appear before the metropolitan court, Plaintiff encountered

another inmate, also named Joshua Saavedra.  [Id.]  On September 9, 2007, Plaintiff

appeared before the metropolitan court by video conference.  [Id.]  Plaintiff informed the

court that he was not the individual involved in the May 2007 domestic violence incident

and further, that the individual implicated in that event was currently detained in the

Bernalillo County Metropolitan Detention Center (MDC).  [Id. at 5-6]  Plaintiff repeated

his claims to detention center officials between September 8 and September 11, but neither the court nor the officials investigated further.  [Id. at six]

On September 12, 2007, Plaintiff appeared personally before the metropolitan court on the domestic violence arrest warrant.  [Id.]  Plaintiff again informed the court, as well as the prosecutor and the public defender, about the Joshua Saavedra who was in custody at the MDC.  [Id.]  The court released Plaintiff into the custody of pretrial services and set a trial date for the domestic violence charges.  [Id. at 6-7]  When Plaintiff met with his assigned pretrial services probation officer, Defendant Eugenia Mecci, he informed her of the mix-up in identity and the location of the other Joshua Saavedra.  [Id. at seven]  Defendant Mecci took no action.  [Id.]  Between September 12, 2007 and November 11, 2007, Plaintiff was required to report to pretrial services twice weekly.  [Id.]  On November 11, 2007, Plaintiff appeared for  trial.  [Id.]  At that time, the alleged victim immediately notified the prosecutor and the court that Plaintiff was not the person who had assaulted her.  [Id.]

In September 2009, Plaintiff filed suit against the City of Albuquerque, the Board of County Commissioners, Officer Smith, Defendant Mecci, and John/Jane Does I-X.  [Doc 1-2]  Defendants removed the matter to this Court.  [Doc 1]  The parties have stipulated to the dismissal of the Board of  County Commissioners and of the John/Jane Does I-X.  [Doc 38]  The parties also stipulated to a stay of discovery, pending the outcome of the summary judgment motions.  [Doc 36]

On April 23, 2009, Defendant Mecci filed *Defendant Ugenia Mecci's Motion For Summary Judgment Or In the Alternative Motion To Dismiss* [Doc 20]. In addition, on October 7, 2010, Officer Smith filed *Defendant Eric Smith's Opposed Motion For Summary Judgment, And Memorandum In Support, Requesting Dismissal Of Plaintiff's Complaint* [Doc 40].

## II.   ANALYSIS

Summary judgment under Fed.R.Civ.P. 56(c) "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2). "When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading. . . ." Fed.R.Civ.P. 56(e)(2). Instead, "its response must . . . set out specific facts showing a genuine issue for trial." Id. Judgment is appropriate "as a matter of law" if the nonmoving party has failed to make an adequate showing on an essential element of its case, as to which it has the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Lopez v. LeMaster, 172 F.3d 756, 759 (10th Cir. 1999).

In order to warrant consideration by the Court, the factual materials accompanying a motion for summary judgment must be admissible or usable at trial (although they do not necessarily need to be presented in a form admissible at trial). See Celotex, 477 U.S. at 324. It is not the court's role, however, to weigh the evidence, assess the credibility of

witnesses, or make factual findings in ruling on a motion for summary judgment.  Rather, the Court assumes the evidence of the non-moving party to be true, resolves all doubts against the moving party, construes all evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor.  <u>See</u> <u>Hunt v. Cromartie</u>, 526 U.S. 541, 551-52 (1999).

In her *Motion*, Defendant Mecci contends that she is entitled to absolute immunity with regard to the challenged actions.

## A.      Mecci's Motion For Summary Judgment

It is well established in the Tenth Circuit that a judge is absolutely immune from civil liability for judicial acts, unless committed in the clear absence of all jurisdiction. <u>Whitesel v. Sengenberger</u>, 222 F.3d 861, 867 (10th Cir. 2000).  Judicial immunity applies even if the action taken was in error, was done maliciously, was in excess of the judge's authority, or flawed by the commission of grave procedural errors. <u>Id.</u>  This same immunity may extend "to persons other than a judge" because "[i]mmunity is justified and defined by the functions it protects and serves, not by the person to whom it attaches."  <u>Id.</u> (internal quotation marks and citation omitted).

Two relevant strands of quasi-judicial immunity appear in our Circuit's precedent. First, an official is entitled to absolute immunity when that person's "duties had an integral relationship with the judicial process."  <u>Id.</u> (internal quotation marks and citation omitted).  Second, an official is entitled to absolute immunity when that person is "acting under the command of a court decree or explicit instructions from a judge."  <u>Stein v.</u>

Disciplinary Bd. of Supreme Court of N.M., 520 F.3d 1183, 1192 (10th Cir. 2008) ("There remains the possibility of recognition of absolute immunity for a clerk acting under the command of a court decree or explicit instructions from a judge." (internal quotation marks and citation omitted)).

**1.      Integral Relationship with the Judicial Process**

"When judicial immunity is extended to officials other than judges, it is because their judgments are functional[ly] comparab[le] to those of judges—that is, because they, too, exercise a discretionary judgment as a part of their function."  Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 436 (1993) (alterations in original) (internal quotation marks and citation omitted).  Our Circuit has explained that the acts performed must be "judicial acts," that the acts must "authoritatively adjudicate[] private rights."  Stein, 520 F.3d at 1192.  Defendant Mecci argues that her supervision constituted a "judicial act" because (1) the Bernalillo County metropolitan court is an arm of the judicial branch of the state of New Mexico, (2) Defendant Mecci is an employee of the metropolitan court, (3) Defendant Mecci's role as a probation officer for the metropolitan court includes the pretrial supervision of individuals awaiting trial, and (4) pretrial supervision aids the court in its responsibility to administer justice and promote community safety.  Further, Defendant Mecci states her function is to "assist the [c]ourt to assure a defendant's appearance at Court hearings, identify risk factors that may involve other persons or the community" and that she "aids the Court in recommending conditions of release."  [Doc 21 at 12]

While these indicated activities may indeed be Defendant Mecci's function as a pretrial probation officer, there is no evidence in the record that these are the roles that Defendant Mecci played with regard to Plaintiff.  In particular, nothing supports the assertion that she made recommendations to the metropolitan court regarding conditions of pretrial release.  Also absent from Defendant Mecci's evidence is any sign of "discretionary judgment."  See Antoine, 508 U.S. at 436.  Pursuant to the metropolitan court rules, it is the court that determines "the type of bail and which conditions of release will reasonably assure appearance of the person as required and the safety of any other person and the community."  Rule 7-401(B) NMRA.  In making that determination, the court evaluates "the available information concerning" a number of listed factors.  Id.  No statute or rule gives the pretrial services probation officer any authority at all to "authoritatively adjudicate[] private rights."  Stein, 520 F.3d at 1192.  According to the Supreme Court of the United States, "the 'touchstone' for the doctrine's applicability has been performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights."  Antoine, 508 U.S. at 435-36 (internal quotation marks and citation omitted).

Defendant Mecci posits that "probation officers provide the [c]ourt with a mechanism to monitor defendants allowing the defendants to be released from jail as they await  trial."  [Id. at 12]  Nevertheless, "even though they may be essential to the very functioning of the courts," such functions should not be regarded as judicial acts.  Id. at 437.  Due to the absence of a "judicial act," I find that Defendant Mecci is not entitled to

quasi-judicial immunity based on the integral relationship between her duties in the present case and the judicial process.

## 2.      Court Decree or Explicit Instructions

Our Circuit has also held that "an official charged with the duty of executing a facially valid court order enjoys absolute immunity from liability for damages in a suit challenging conduct prescribed by that order."  Valdez v. City & County of Denver, 878 F.2d 1285, 1286 (10th Cir. 1989).  In this context, the Court considers whether the judge's order was "one for which the issuing judge is immune from liability," whether that order was facially valid, whether the official was acting within the scope of his jurisdiction, and whether the acts of the official were actually prescribed by the judge's order.  Moss v. Kopp, 559 F.3d 1155, 1163-68 (10th Cir. 2009).

The scope of the first inquiry is whether the official executed an order "issued by a judge acting in clear absence of all jurisdiction."  Id. at 1163 (internal quotation marks and citation omitted).  The metropolitan court is not a court of general jurisdiction. Nevertheless, "[m]etro court is a court of record for criminal actions within its jurisdiction that involve domestic violence; acts of domestic abuse under the Family Violence Protection Act are considered domestic violence."  State v. Wilson, 2005-NMCA-130, ¶ 2, 138 N.M. 551, 123 P.3d 784; see NMSA 1978, § 34-8A-6(C) ("The metropolitan court is a court of record for criminal actions involving driving while under the influence of intoxicating liquors or drugs or involving domestic violence.").  Plaintiff was undisputably charged with a domestic violence violation, and the metropolitan court

therefore had statutory subject matter jurisdiction to adjudicate the case.  Even if the

metropolitan court's handling of the case was in error, there is no authority for the

proposition that the judge was without subject matter jurisdiction to order Plaintiff, as a

defendant in a domestic violence action, to pretrial supervision.  See Moss, 559 F.3d at

1164 ("And since he was a judge of a court of general jurisdiction, neither Judge

Medley's commission of error in granting the motions that led to the two disputed orders,

nor the apparent lack of a statute authorizing Judge Medley's approval of the motions

leading to the orders, rendered his actions in 'clear absence of all jurisdiction.'").

The second inquiry examines whether the court's order was "facially valid."  Id.  It

is clearly established, however, that "'facially valid' does not mean 'lawful,' and

erroneous orders can be valid."  Id. at 1165.  The Moss Court explained that

> State officials must not be required to act as pseudo-appellate courts
> scrutinizing the orders of judges, but subjecting them to liability for
> executing an order because the order did not measure up to statutory
> standards would have just that effect.  Further, [t]o allow plaintiffs to bring
> suit any time a state agent executes a judicial order which does not fulfill
> every legal requirement would make the agent a lightning rod for harassing
> litigation aimed at judicial orders.  Simple fairness requires that state
> officers not be called upon to answer for the legality of decisions which
> they are powerless to control.

Id. (alteration in original) (internal quotation marks and citations omitted).  Plaintiff does

not appear to argue that the order itself was facially invalid.  Indeed, the order simply

requires that Plaintiff participate in "Pretrial Supervision."  As has been explained, the

metropolitan court is authorized by rule to order pretrial supervision:  "The court, upon

release of the defendant or any time thereafter, may enter an order, that such person's

release be subject to . . . a condition that the person report on a regular basis to a

designated pretrial services agency or other agency agreeing to supervise the defendant."

Rule 7-401(C)(2)(f) NMRA.

Next, this Court considers whether when Defendant Mecci followed the order, she

was acting within the scope of her jurisdiction.  Moss, 559 F.3d at 1167.  In Moss, the

Court observed that the officials in question acted within their jurisdiction by following

the court's orders because the officials were obligated by statute to obey court orders and

because the court had contempt power, which could be exercised if the court's orders

were not obeyed.  Id.  The metropolitan court, in the present case, also has contempt

power, which can be brought to bear in the event of "disobedience or resistance to any

lawful order, rule or process of the court."  Rule 7-111(A)(3) NMRA.  Further, Plaintiff

does not appear to challenge Defendant Mecci's jurisdiction to follow a court

order—instead, Plaintiff argues that Defendant Mecci was not necessarily "in compliance

with court directives when defining the terms of Plaintiff's conditions of release."  [Doc

27 at 8-9]  This argument pertains to the final criterium.

"[Q]uasi-judicial immunity extends only to acts prescribed by the judge's order."

Moss, 559 F.3d at 1167.  "Therefore, absolute immunity does not protect defendants from

damage claims directed not to the conduct prescribed by the court order itself, but to the

manner of the order's execution."  Id.  Thus, the Court considers whether based on the

record as a whole, each action taken by Defendant Mecci "was taken under the direction

of a state court judge."  Id.  Plaintiff points out that the order in the present case simply

required "pretrial supervision," but did not specify "how this should be accomplished."

[Id. at 9]  To this end, Plaintiff requests additional discovery under Federal Rule of Civil

Procedure 56(f), in order to determine whether "Defendant [Mecci] was working under

her own discretion and possibly that of law enforcement in defining the actual terms of

Plaintiff's pretrial conditions, as well as working contrary to existing protocol and Court

directives in defining those terms."  [Id.]

     I am not persuaded that additional discovery will be helpful in the present case.

Plaintiff's *Complaint* alleges that he was required to report twice weekly to pretrial

services.  [Doc 1-2 at 7]  The *Complaint* further states, as part of Count 3, that "[e]ach

and every time that Plaintiff Saavedra was required to submit to random drug screens

constituted an unlawful search of Plaintiff's person."  [Id. at 10]  In his response to

Defendant Mecci's *Motion*, Plaintiff submits no affidavit or evidence indicating the extent

of his pretrial conditions of release.  This is curious, because despite his asserted lack of

access to evidence, the best evidence of the conditions of release and supervision are

within his own memory.  Plaintiff provides no evidence regarding what pretrial services

required him to do, and thus, there is no basis on which this Court can conclude that

Defendant Mecci acted outside of the confines of the judge's order.  Baca v. Sklar, 398

F.3d 1210, 1216 (10th Cir. 2005) ("Mere allegations unsupported by further evidence,

however, are insufficient to survive a motion for summary judgment.")

### 3.   **Quasi-Judicial Immunity**

Because Defendant Mecci acted only in her official capacity in order to execute a facially valid court order, she is entitled to quasi-judicial immunity for her actions relating to the pretrial supervision of Plaintiff.

### B.   **Smith's Motion For Summary Judgment**

Officer Smith seeks summary judgment on Plaintiff's claims pursuant to 42 U.S.C. § 1983 and to the New Mexico Constitution and state statutes.  I turn first to the Section 1983 claim and then consider the questions of state law.

### 1.   **Section 1983**

42 U.S.C. § 1983 provides, in relevant part, that

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  Persons sued in their individual capacity under this civil-rights statute generally are entitled to qualified immunity unless the plaintiff can establish that the defendant's actions violated a specific federal statutory or constitutional right and that the rights which they allegedly violated were clearly established at the time of the conduct at issue.  See Gross v. Pirtle, 245 F.3d 1151, 1155-56 (10th Cir. 2001); Oliver v. Woods, 209 F.3d 1179, 1185 (10th Cir. 2000).

"Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Medina v. City & County of Denver, 960 F.2d 1493, 1498 (10th Cir. 1992).  But "officials can still be on notice that their conduct violates established law even in novel factual circumstances." Hope v. Pelzer, 536 U.S. 730, 741, 745 (2002); accord Holland v. Harrington, 268 F.3d 1179, 1197 (10th Cir. 2001).  The "salient question" is whether the state of the law at the time of the incident gave the defendants "fair warning" that their conduct was unconstitutional.  Hope, 536 U.S. at 741.   If a plaintiff cannot show that a clearly established constitutional right was violated, the Court must grant the defendant qualified immunity.  See Gross, 245 F.3d at 1156.

Plaintiff contends that Officer Smith's actions violated the Fourth Amendment to the United States Constitution.  The Fourth Amendment provides that

> [t]he right of the people to be secure in their persons, houses, papers, and
> effects, against unreasonable searches and seizures, shall not be violated,
> and no Warrants shall issue, but upon probable cause, supported by Oath or
> affirmation, and particularly describing the place to be searched, and the
> persons or things to be seized.

U.S. Const. amend. IV.  Plaintiff argues that by issuing the criminal summons, Officer Smith violated the Fourth Amendment by initiating a seizure without probable cause.  In his *Complaint For Civil Rights Violations & Violation Of The New Mexico Tort Claims*

*Act*, Plaintiff identifies this claim as one for deprivation of the right to be free from malicious prosecution, arising under the Fourth Amendment.  [Doc 1-2 at 7]

A Fourth Amendment malicious prosecution claim under Section 1983 has five elements:  "1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages."[1]  Wilkins v. DeReyes, 528 F.3d 790, 799 (10th Cir. 2008).  The third element "supplies the necessary connection between the malicious prosecution cause of action and [Plaintiff's] Fourth Amendment allegations."  Id. at 799.  Officer Smith focuses on this third element, arguing that the criminal summons did not constitute a seizure to trigger Fourth Amendment protections.   He also argues that regardless, he had probable cause to support issuing the summons.

**a.       Criminal Summons as Seizure**

Generally, a seizure "requires intentional acquisition of physical control."  Becker v. Kroll, 494 F.3d 904, 915 (10th Cir. 2007).  Our Circuit has declined to extend the definition of a "seizure" to include "cases where the plaintiff has not been arrested or incarcerated."  Id.  Further, even when a person has been incarcerated, the Circuit has rejected a "continuing seizure" rationale for post-arrest incarceration and has instead held that "a seizure ends when pretrial incarceration begins."  Id. at 916.

---

[1]  The parties do not cite this case nor do they analyze these elements as they have been laid out by our Circuit.  The parties' arguments can, however, be fit into the legal framework that has been established by the Circuit.

Tracing the relevant events, a criminal complaint was filed on May 22, 2007, which included Plaintiff's name and social security number, but the address was that reported to Officer Smith by the alleged victim.  [Doc 40-2]  The criminal complaint resulted in a criminal summons for a person named "Joshua Saavedra," with a 1985 birth date, residing at 143 Dallas St. SE, with a social security number ending in "0329."  [Doc 40-1 at 2]  The summons was issued on May 31, 2007.  [Id.]  On June 15, 2007, a metropolitan court judge signed a bench warrant for the "Joshua Saavedra" described in the criminal summons, when no person appeared at a June 14, 2007 "bond arraignment" hearing associated with the criminal summons.  [Doc 40-3]

On September 8, 2007, Plaintiff was arrested for selling or giving alcohol to minors.  [Doc 40-13]  The next day, the Bernalillo County Detention Center authorities discovered the outstanding June 2007 bench warrant.  [Doc 40-14]  A hold was placed on Plaintiff's release, until the assigned judge could determine whether Plaintiff had violated any conditions of release related to the domestic violence incident.  [Doc 40-15]  The hold was removed on September 11, 2007 and Defendant was released on his own recognizance subject to pretrial supervision.  [Doc 40-16]

There is no dispute that Plaintiff was subject to a significant restraint on his liberty during his incarceration between September 9, 2007 and September 11, 2007.  See Petersen v. Farnsworth, 371 F.3d 1219, 1221-22 (10th Cir. 2004) ("[I]n order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct

would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." (alteration in original) (internal quotation marks and citation omitted)). Based on this review of undisputed facts, there is sufficient evidence to establish that Plaintiff was seized in conjunction with the criminal summons initiated by Officer Smith from September 9, 2007, when the hold order was issued, until September 11, 2007, when he was released.   See Becker, 494 F.3d at 915.

**b.    Probable Cause**

Officer Smith next argues that he had probable cause on which to base the May 31, 2007 criminal summons.  "Probable cause at least presupposes that there be reasonable and particularized grounds for belief that a suspect is guilty of some crime." Mata v. Anderson, 685 F.Supp.2d 1223, 1266 (D.N.M. 2010).  Probable cause for a criminal summons is established by "demonstrating a substantial probability that a crime has been committed and that a specific individual committed the crime." Wilkins, 528 F.3d at 801 (internal quotation marks and citation omitted) (addressing arrest warrants); Peterson, 371 F.3d at 1222 (applying the same standard to a criminal summons).  Further, our Circuit has explained that "[l]aw enforcement officials who mistakenly conclude that probable cause exists are still entitled to qualified immunity if their conclusion was reasonable." Walker v. City of Okla., 203 F.3d 837, * 5 (10th Cir. 2000) (unpublished).

The Walker case bears some similarity to the present controversy.  In that case, the police interviewed the victim of a kidnaping and assault.  Id. at *1.  The interviewing

officer's notes from the interview revealed that the victim reported that the suspect's name was "Tanisha Walker," an address for the suspect, and the suspect's height and weight.  Id.  The victim was interviewed again at the hospital, and she provided much of the same information, as well as the additional fact that the suspect lived at the nearby air force base.  Id. *2.  The officer observed that the victim was in pain, on medication, and also somewhat intoxicated.  Id.  Nevertheless, the officer was satisfied that the victim became more alert as the interview progressed.  Id.  After speaking with the victim at the hospital, the officer proceeded to the air force base, located a woman named "Tenisha Walker," interviewed Ms. Walker, and arrested her.  Id.  Ultimately, it was discovered that a completely different "Tenisha Walker," who did not live at the air force base, was responsible for the crime.  Id.

In relevant part, Ms. Walker sued the arresting officer for malicious prosecution. Id. at *3.  The district court concluded that there was probable cause to arrest Ms. Walker, and the Circuit agreed.  Id. at * 3, 9.  The Walker Court explained that the specificity of the information that the victim provided demonstrated that she was alert enough to provide the arresting officer with reliable information.  Id. at *6-7.  The Court further held that the arresting officer was not obligated to compare what the victim had initially reported to what the victim reported in the hospital.  Id. at * 8.  In addition, the arresting officer was not required to search through databases to determine whether a second person with the same name lived in the area.  Id.

Viewing the facts in the present case in the light most favorable to Plaintiff, the alleged victim gave Officer Smith the name "Joshua Saavedra," an address for him, and an approximate age range.  Officer Smith visited the address but did not locate a "Joshua Saavedra."  He plugged the victim's information into the MDC database, because the victim had reported that the alleged abuser had been previously arrested.  Officer Smith came up with a single matching name, and that name was associated with Plaintiff's birth date and social security number.  Based on these facts, Officer Smith issued the criminal summons.  In the aftermath, it is clear that Officer Smith was mistaken about the date of birth and the social security number listed in the criminal summons.  These mistakes, however, were reasonable mistakes of fact given the information that the victim provided—name, approximate age, and the fact of a prior arrest.  See id., at * 6 ("[L]aw enforcement officers are entitled to rely on information supplied by the victim of a crime, absent some indication that the information is not reasonably trustworthy or reliable." (internal quotation marks and citation omitted)).

Based on the undisputed material facts, Officer Smith had probable cause at the relevant time to believe that Plaintiff was the individual responsible for the alleged battery.  See id. at 3 ("[A]t the relevant time there was probable cause to believe Tenisha Walker committed the crimes.").  This conclusion is not without some reservation.  Officer Smith made a number of assumptions in his investigation that resulted in a deprivation of Plaintiff's liberty.  His inferences, however, were reasonable—that "Joshua

Saavedra" had been arrested and only one "Joshua Saavedra" existed in the MDC database.

Plaintiff has attached as exhibits to his *Response* additional resources that Officer Smith could have accessed in order to determine if other "Joshua Saavedras" existed. Additional investigative work may well have uncovered other "Joshua Saavedras," with presumably different identifying information. Nevertheless, the information available to Officer Smith at the time that the criminal summons was issued was sufficient to establish probable cause to issue a criminal summons. See id. at * 8 (considering the value of potential additional investigative work when the initial investigation established probable cause to arrest, even though the wrong person was ultimately arrested). To require additional database searches to eliminate the possibility of additional persons with the same name seems a hazy standard—how many searches would have been enough? This is particularly so because although Plaintiff attached materials relating to the existence of other available databases, Plaintiff has provided no evidence that other "Joshua Saavedras" are actually present in either of the other databases or that such a search, had it been conducted by Officer Smith, would have been fruitful.

**c.** **Malice**

Although neither party has briefed or raised the question of the "malice" element of malicious prosecution, I include it in my analysis because this element is absolutely dispositive. In Wilkins, our Circuit determined that the plaintiff presented sufficient evidence to support an inference of malice by demonstrating that the defendant officers

recklessly or intentionally coerced false statements from suspects and fabricated evidence. Id. at 799-801. Although Plaintiff alleged that Officer Smith's actions "were willful, wanton, and in reckless disregard of Plaintiff's constitutional rights," [Doc 1-2 at 8] he has provided no evidence to support this claim. Indeed, in his *Response* to Officer Smith's motion for summary judgment, Plaintiff states that Officer Smith *negligently* prepared the criminal complaint—that he failed to exercise a duty of care espoused by reasonably prudent and qualified law enforcement officers. While he could have done more to investigate, there is simply no contention or evidence that Officer Smith acted with malice, that he intentionally or recklessly caused the criminal summons to issue with the incorrect social security number and date of birth. Id. at 800-01 ("Qualified immunity of course operates to grant officers immunity for reasonable mistakes as to the legality of their actions." (internal quotation marks and citation omitted)).

**d.    Qualified Immunity**

Officer Smith had probable cause to issue the criminal summons, and there is no evidence that he acted intentionally or recklessly. As a result, Plaintiff cannot demonstrate the violation of a clearly established constitutional right, and  Officer Smith is entitled to qualified immunity for Plaintiff's Section 1983 claims.

**2.    State Law Claims**

Plaintiff also brings claims against Officer Smith pursuant to the New Mexico State Constitution for malicious prosecution and unreasonable seizure and for violations of New Mexico State statutes. Plaintiff's state constitutional claims are based on Officer

Smith's alleged lack of probable cause.  [Doc 41 at 14]  Having already determined that the criminal summons was supported by probable cause, Plaintiff's state law constitutional claims must also be dismissed.

Turning to the alleged statutory violations, Plaintiff makes claims for "false arrest, malicious prosecution and defamation of character caused by Defendant Smith's negligent failure to properly prepare the criminal complaint at issue."  [Doc 41 at 8]  As with the state constitutional arguments, the determination that Officer Smith actions were supported by probable cause is dispositive of the false arrest and malicious prosecution claims.  See Dickson v. City of Clovis, 2010-NMCA-058, ¶21, __ N.M. __ , __ P.3d __ (concluding that claims for false arrest and malicious prosecution were properly dismissed in a case where the officer had probable cause to arrest); Santillo v. N.M. Dep't of Pub. Safety, 2007-NMCA-159, ¶ 12, 143 N.M. 84, 183 P.3d 6 ("An officer who has probable cause to arrest a person cannot be held liable for false arrest or imprisonment, since probable cause provides him with the necessary authority to carry out the arrest." (internal citations omitted)).

In addition, New Mexico has adopted a "qualified-privilege approach" to defamation claims.  See Hagebak v. Stone, 2003-NMCA-007, ¶ 22, 133 N.M. 75, 61 P.3d 201 (corporate context).  This privilege "applies when a statement is made in good faith during the discharge of a public or private duty."  Id. ¶ 13; Bookout v. Griffin, 97 N.M. 336, 339, 639 P.2d 1190, 1193 (1982) ("One form of qualified privilege exists where there is a good faith publication in the discharge of a public or private duty.").  As

discussed above, Plaintiff has not demonstrated that Officer Smith acted with any

malice—Plaintiff has not provided evidence of bad faith, or pointed to any disputed

material fact that would support a lack of good faith when he issued the criminal

summons.  Accordingly, Officer Smith has established a qualified privilege under New

Mexico law, which shields him from Plaintiff's defamation claim.

## C.     **Municipal Claims**

Plaintiff also brings claims against the City of Albuquerque for maintaining

official policies that permit or ignore the alleged constitutional violations and for failure

to train or supervise its employees.  [Doc 1-2 at 13-15]  In order to establish the official

policy claim against the municipality, there must be a showing "'that the unconstitutional

actions of an employee were representative of an official policy or custom of the

municipal institution, or were carried out by an official with final policy making authority

with respect to the challenged action.'"  Camfield v. City of Oklahoma City, 248 F.3d

1214, 1229 (10th Cir. 2001) (*quoting* Pembaur v. City of Cincinnati, 475 U.S. 469,

480-83 (1986)).  Furthermore, "a municipality may be liable under § 1983 for an officer's

constitutional violation if the violation was the result of inadequate police training and the

municipality's failure to train the officer amounted to deliberate indifference to the rights

of those with whom police come into contact."  Simpson v. Univ. of Colo. Boulder, 500

F.3d 1170, 1178 (10th Cir. 2007) (internal quotation marks and citation omitted).  The

Court has already determined that Officer Smith committed no constitutional violation,

and accordingly, no claim stemming from the constitutional violations alleged in the

*Complaint* can lie against the City of Albuquerque.  See Butler v. City of Prairie Village, Kan., 172 F.3d 736, 747 (10th Cir. 1999)("Because our conclusion that the individual defendants are entitled to qualified immunity rests on the determination that none of them violated Plaintiff's constitutional rights, the City may not be found to have violated his rights.").

In his *Complaint*, Plaintiff asserted municipal liability claims against the City of Albuquerque, as related to Officer Smith's conduct, and against the Board of County Commissioners, as related to Defendant Mecci's conduct.  [Doc 1-2 at 3]  The Board of County Commissioners was dismissed from this case by stipulation, and as a result, no municipal liability claim remains to be asserted for Defendant Mecci's alleged conduct.

## III.    CONCLUSION

For the reasons stated above, Defendant Mecci is entitled to quasi-judicial immunity from Plaintiff's claims.  Further, Officer Smith is entitled to qualified immunity from Plaintiff's Section 1983 claims, and resultantly, no municipal liability stems from Officer Smith's conduct.  Plaintiff's state claims against Officer Smith are further unsupportable under New Mexico law.

**IT IS THEREFORE ORDERED** that *Defendant Ugenia Mecci's Motion For Summary Judgment Or In the Alternative Motion To Dismiss* [Doc 20] is **GRANTED**.

**IT IS FURTHER ORDERED** that *Defendant Eric Smith's Opposed Motion For Summary Judgment, And Memorandum In Support, Requesting Dismissal Of Plaintiff's Complaint* [Doc 40] is **GRANTED**.

**IT IS FURTHER ORDERED** that the PRETRIAL CONFERENCE set for TUESDAY, February 1, 2011, at 9:00 a.m., the CALL OF THE CALENDAR set for THURSDAY, March 3, 2011, at 9:00 a.m., and the JURY SELECTION/TRIAL set for MONDAY, March 8, 2011, at 9:00 a.m. are hereby VACATED.

**SO ORDERED** this 30th day of November, 2010, in Albuquerque, New Mexico.


M. CHRISTINA ARMIJO
United States District Judge

.